# ORIGINAL



FILED IN CLERKS OFFICE
U.S.D.C.

JAN 29 2003

LUTH...
By:
Deputy Clerk

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walker v. World Championship Wrestling, Inc., Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-0367-CC

Onoo v. World Championship Wrestling, Inc., Turner Sports, Inc.
    and Turner Broadcasting System, Inc., Civ. File No. 1:00-
    CV-0368-CC

Norris v. World Championship Wrestling, Inc., Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-0369-CC

Easterling v. World Championship Wrestling, Inc. and Turner
    Sports, Inc. and Turner Broadcasting System, Inc., Civ.
    File No. 1:00-CV-1715-CC

Davis v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1716-CC

Worthen v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1717-CC

Speight v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1718-CC

Saengsiphan v. World Championship Wrestling, Inc. and Turner
    Sports, Inc. and Turner Broadcasting System, Inc., Civ.
    File No. 1:00-CV-1719-CC

Reeves v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc., Civ. File No.
    1:00-CV-1720-CC

Patterson v. World Championship Wrestling, Inc., Turner Sports,
    Inc., Turner Entertainment Group, Inc. and Turner
    Broadcasting System, Inc., Civ. File No. 1:01-CV-1152-CC

## DEFENDANTS RESPONSE TO PLAINTIFFS' "SECOND" MOTION
## TO REMOVE CONFIDENTIALITY DESIGNATION

Pursuant to the Court's instructions, Defendants Universal

Wrestling Corporation (f/k/a World Championship Wrestling, Inc.)

("WCW"), Turner Sports, Inc., Turner Entertainment Group, Inc.

103

and Turner Broadcasting System, Inc. ("TBS") (collectively "Defendants") submit this Response to Plaintiffs' Second Motion To Remove Confidentiality Designation.

## INTRODUCTION

Plaintiffs' purported "second" motion arises out of Plaintiffs' improper attempts to publicly disclose confidential information in violation of the Consent Protective Orders previously entered by this Court.[1]  After Plaintiffs' counsel threatened to file confidential materials unsealed in connection with summary judgment motions in Walker and Norris, in violation of the express terms of the Consent Protective Orders entered in this case,[2] Defendants were forced to contact the Court and obtain an emergency Order directing Plaintiffs not to disclose such documents.  It was only after the Court precluded Plaintiffs from blatantly violating the Consent Protective Order, that Plaintiffs filed their "first" motion to challenge confidentiality designations.

In the hearing held before the Court on January 21, 2003 to resolve confidentiality issues, the Court directed Plaintiffs to

---

[1] Defendants respectfully refer to their January 10, 2003 letter to the Court, a copy of which is attached hereto as Exhibit 1.
[2] A copy of Mr. Ichter's letter, in which he refused to file confidential documents under seal, is attached to the January 10, 2003 letter at Tab B.

file a motion as to any remaining documents for which Plaintiffs challenged Defendants' confidentiality designation.

On the afternoon of January 23, 2003, Defendants received a letter from Plaintiffs' counsel in which Plaintiffs requested Defendants' position as to over 20,000 pages of documents that had been designated as confidential **by noon that same day**.[3] (See Plaintiffs' Br., Exh. B). By letter that same day, Defendants advised Plaintiffs' counsel that they could not complete such an extensive review within the requested time period, and that Defendants therefore could not withdraw any confidentiality designations. Plaintiffs' Motion followed.

### ARGUMENT

Plaintiffs' "second" Motion represents yet another attempt by Plaintiffs to improperly publicize these proceedings as they have done in the past, and to unnecessarily harass and burden Defendants by purporting to require Defendants to review over 20,000 pages of documents, the vast majority of which have no relevance whatsoever to Plaintiffs' claims. Plaintiffs have no legitimate reason for seeking to publicly disclose these irrelevant documents, and Defendants should not be required to

---

[3] Although the letter is dated January 22, 2003, Defendants' counsel did not receive it until the following afternoon. (See Plaintiffs' Br., Exh. C).

undertake such an extensive, burdensome, and ultimately meaningless review.

Plaintiffs made absolutely no effort to limit their confidentiality challenge to documents that are actually relevant to their claims at summary judgment or at trial. In fact, an examination of Plaintiffs' Responses to Defendants' Summary Judgment Motions in the Walker, Onoo, and Norris cases, and the documents and testimony submitted in connection therewith, demonstrate that the vast majority of the documents listed in Plaintiffs' Motion are not relevant to any of the Plaintiffs' claims.

The vast majority of the documents and testimony relevant to Plaintiffs' claims already has been identified in connection with Defendants' Motions for Summary Judgment in the Walker, Onoo, Norris, Davis, Worthen and Reeves cases, and in Plaintiffs' responses thereto. Most, if not all of the documents contained in Plaintiffs' Appendices filed in the Walker, Onoo, and Norris cases are deposition testimony and exhibits. Notably, when Plaintiffs previously identified 26 deposition transcripts, and exhibits thereto, that Plaintiffs sought to file in connection with their Summary Judgment responses, Defendants withdrew their confidentiality designations as to the vast majority of those documents, leaving

only the four items that the Court ruled on at the January 21, 2003 hearing.[4]  Plaintiffs make no attempt to identify relevant documents now.  Because the vast majority of the documents Plaintiffs cite are irrelevant, there is no proper purpose for Plaintiff to seek public disclosure of these documents.

Despite this Court's previous indications that it wished to review documents as to which confidentiality designations were challenged, Plaintiffs do not even attempt to place any of the actual documents at issue before the Court.  Rather, Plaintiffs rely on document indexes they prepared to identify the documents in summary form.  These vague, general indexes are wholly insufficient to enable the Court (or Defendants) to meaningfully asses whether, in fact, the referenced documents are entitled to continued protection from disclosure.[5]

Defendants do not contend that every document listed by Plaintiffs is entitled to continued protection.from public disclosure.  Nevertheless, the sheer volume of documents listed precludes Defendants or this Court from making any meaningful determination as to the continued confidentiality of all of these documents.  Defendants cannot, nor should they be required

---

[4] See Exhibit 1 (January 10, 2003 letter to the Court).
[5] Defendants have no way to verify that Plaintiffs' descriptions of documents contained in their indexes are accurate, short of reviewing every document themselves.

to, undertake a detailed review of tens of thousands of pages of documents at Plaintiffs' whim, simply because Plaintiffs think that there is a tactical advantage to making a wholesale challenge to the process contemplated by the Consent Protective Order.

For example, Plaintiffs challenge the confidentiality designation as to voluminous internal e-mail correspondence between WCW representatives, with little or no description regarding the content of such correspondence.  (See, e.g., Plaintiffs' Br., Exh. E, at p.59).  Plaintiffs also challenge the confidentiality designation as to hundreds of Independent Contractor Agreements and Merchandising Agreements with wrestlers and other on-air talent at WCW, the overwhelming majority of which have no relevance to Plaintiffs or their claims.  (See, e.g., Plaintiffs' Br., Exh. J).  Defendants cannot, nor should they be required to, conduct an extensive review of each of these largely irrelevant documents to ascertain whether Defendants are obligated to keep any of them confidential.  Moreover, Plaintiffs have not offered and cannot offer any legitimate reason why any of the documents they now reference should not remain confidential.  Accordingly, Plaintiffs' Motion should be denied.

At the beginning of this litigation, the parties stipulated to the Consent Protective Order, which allowed each party to designate documents as confidential and subject to protection under Federal Rule of Civil Procedure 26(c)(7).  The Consent Protective Orders replaced the need to litigate claims for protection document-by-document, and postponed any showing of "good cause" until the confidential designation is challenged. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1307-08 (11th Cir. 2001).

The Consent Protective Orders issued in the above cases, as in others, are designed "to encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of proper disclosure."  In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). "After this sifting, material can be 'filed' for whatever purpose **consistent with the issues being litigated** whether by pretrial hearing or an actual trial.  Judicial review will then be **limited to those materials relevant to the legal issues raised**."  Id., 820 F.2d at 356 (emphasis added).  Plaintiffs' Motion, which purports to require Defendants to closely review tens of thousands of irrelevant documents in order to avoid giving up its rights under the Consent Protective Order, is

contrary to the intent and purpose of the Consent Protective
Order.

Plaintiffs admit that a comprehensive review of the over
20,000 pages of documents listed by Plaintiffs is burdensome.
Nevertheless, Plaintiffs blithely assert that "it is a burden of
Defendants' making." (Plaintiffs' Br. at 3). To the contrary,
the burden Plaintiffs seek to impose on Defendants is entirely
of **Plaintiffs'** making. Instead of conducting a meaningful
review of the documents to determine which of the documents had
any relevance to their claims, Plaintiffs challenged every
confidentiality designation by Defendants, without the slightest
regard for whether the documents are relevant to Plaintiffs'
claims. This clumsy attempt to invent unnecessary disputes and
burden Defendants should not be rewarded. Had Plaintiffs
engaged in a thoughtful review of the documents before filing
their motion (as is their burden), Plaintiffs could have
narrowed down the universe of challenged documents to those that
were relevant to their claims.[6] Then, Defendants could have

---

[6] Plaintiffs are perfectly capable of conducting such a review.
In connection with their Summary Judgment Responses in Walker,
Onoo and Norris, Plaintiffs identified 26 depositions and the
exhibits thereto. As discussed in Defendants' January 10, 2003
letter to the Court and in the January 21, 2003 hearing, after
review, Defendants removed their confidentiality designation
from all but three documents, and the TBS Rule 30(b)(6)
deposition. In fact, as is demonstrated by Plaintiffs' Summary

reviewed the narrowed set of documents in good faith. Plaintiffs chose not to do so, instead burdening Defendants and this court with the task of doing so.  Plaintiffs' unjustified tactics directly contravene the principles of efficiency underlying the Consent Protective Order.

Remarkably, Plaintiffs, having belatedly dumped over 20,000 pages of documents on Defendants (and the Court) without rhyme or reason, now contend that Defendants' inability to voluntarily lift confidentiality designations within a couple of days "constitute[s] yet another abuse of the Consent Protective Order." (Plaintiffs' Br. at 8).  Even more remarkably, Plaintiffs now ask the Court to "rebuke Defendants [sic] abuse of the rights afforded them under the Consent Protective Order." (Plaintiffs' Br. at 4).

Plaintiffs have an extremely short memory.  As this Court will recall, it was **Plaintiffs'** disregard of its obligations under the Consent Protective Order that resulted in the Court's Order that underlies the instant Motion.  In any event, there is no basis for Plaintiff's suggestion that the Court should rebuke **Defendants**.

---

Judgment Responses to date, most if not all information and documents relevant to Plaintiffs' claims are deposition exhibits.

Plaintiffs' arguments regarding the "good cause" showing necessary to maintain confidentiality ignore the fact that the Eleventh Circuit, as well as other courts, have imposed a "balancing of interests approach" onto the Rule 26 "good cause" requirement.  _Chicago Tribune Co._, 263 F.3d at 1313.  This standard requires the Court to **balance** the party's interest in obtaining disclosure against the other party's interest in keeping the information confidential.[7]  _Id._  Applying this test, the balance of interests clearly weighs against wholesale disclosure of confidential documents in this fashion.

Plaintiffs have never identified and cannot identify any legitimate purpose served by wholesale disclosure of information that is largely irrelevant to Plaintiffs' claims.  Thus, plaintiffs cannot even remotely demonstrate that their interest in wholesale disclosure of these irrelevant documents outweighs

---

[7] The Third Circuit has recognized _several_ factors that the Court may consider in evaluating _whether good cause_ exists for a protective _order for_ confidential material.  Among those factors are (1) whether disclosure will violate any privacy interests; (2) **whether the information is being sought for a legitimate purpose or for an improper purpose**; (3) whether disclosure of the information will embarrass a party; and (4) whether confidentiality is being sought for information important to public health and safety.  Glenmeade Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (emphasis added).  As noted above, there is no legitimate purpose for Plaintiffs to seek the wholesale removal of confidentiality designations, and none of the other factors listed above supports Plaintiffs' request.

Defendants' interest in maintaining these documents as confidential.

Plaintiffs' references to the common law right of access to judicial proceedings (Plaintiffs' Br. at 6) and the importance of public access to the judicial system (Plaintiffs' Br. at 8-9) are irrelevant. This is not a case where Defendants have denied disclosure to Plaintiffs. Plaintiffs have the information they sought. This case is about Plaintiffs' continued efforts to publicize irrelevant information they already have for their own improper purposes.[8] Plaintiffs' continued efforts are without justification, harassing, burdensome, contrary to the intent and spirit of the Consent Protective Orders, and contrary to controlling law in this Circuit. Accordingly, Plaintiffs' Motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiffs' Second Motion To Remove Confidentiality Designation be denied in its entirety.

---

[8] As this court will recall, these efforts included bringing a news reporter to a deposition of a former WCW executive, and written threats to leak confidential information to the press. (See January 10, 2003 letter from Attorney Ichter to Attorney Richardson, a copy of which is attached to Defendants' January 10, 2003 letter to the Court (Exhibit 1) at Tab B).

This 29th day of January, 2003.


John J. Dalton
Georgia Bar No. 203700
James A. Lamberth
Georgia Bar No. 431851
Eric A. Richardson
Georgia Bar No. 233873
Evan H. Pontz
Georgia Bar No. 583577

Counsel for Defendants

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3000



# EXHIBIT / ATTACHMENT

**(To be scanned in place of tab)**

# TROUTMAN SANDERS LLP

A T T O R N E Y S   A T   L A W
A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Eric A. Richardson
eric.richardson@troutmansanders.com

Direct Dial: 404-885-3496
Direct Fax: 404-962-6666

January 10, 2003

**BY HAND DELIVERY**

The Honorable Janet F. King
United States Magistrate Judge
United States Courthouse, Chambers 1613
75 Spring Street, SW
Atlanta, Georgia  30303

    Re:    Walker v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1:00-CV-0367-CC
        Onoo v. World Championship Wrestling, Inc. and Turner
           Sports, Inc., Civ. File No. 1:00-CV-0368-CC
        Norris v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1:00-CV-0369-CC
        Easterling v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1-00-CV-1715-CC
        Davis v. World Championship Wrestling, Inc. and Turner
           Sports, Inc., Civ. File No. 1-00-CV-1716-CC
        Worthen v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1-00-CV-1717-CC
        Speight v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1-00-CV-1718-CC
        Saengsiphan v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1-00-CV-1719-CC
        Reeves v. World Championship Wrestling, Inc. and
           Turner Sports, Inc., Civ. File No. 1-00-CV-1720-CC
        Patterson v. World Championship Wrestling, Inc.,
           Turner Sports, Inc. and Turner Entertainment Group,
           Inc., Civ. File No. 1:01-CV-1152-CC

Dear Judge King:

    With the Court's permission, Defendants write to request an
Order from the Court directing Plaintiffs to file confidential
materials under seal pursuant to the Consent Protective Orders

ATLANTA • HONG KONG • LONDON • NORFOLK • RICHMOND
TYSONS CORNER • VIRGINIA BEACH • WASHINGTON, D.C.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 2

previously entered by this Court.[1]  Plaintiffs' counsel has
expressed his intent to publicly file confidential materials
this Monday, January 13, 2003, in connection with Plaintiffs'
responses to summary judgment motions in the Walker and Norris
cases.[2]  Plaintiffs' counsel has refused to file these
confidential materials under seal, as is required by the Consent
Protective Order entered in this case, and has not filed any
motion with the Court to remove any confidential designation, as
he also is required to do under the Order.[3]  Accordingly,
Defendants have no alternative except to seek a ruling from the
Court precluding Plaintiffs from publicly disclosing these
materials.  Pursuant to the Court's instructions, Defendants
also submit copies of these materials for the Court's
consideration.  Defendants respectfully request that the Court
order Plaintiffs to file such confidential materials, and any
portion of their filings containing or disclosing such
confidential materials, under seal.

     In a letter dated January 8, 2003, Plaintiffs' counsel Cary
Ichter advised me of his intent to file 26 depositions (and the
exhibits attached thereto), many of which Defendants had
designated as confidential, as early as January 13, 2003.  Mr.
Ichter also advised me that he did not intend to file any of
those materials under seal.[4]

     In a letter faxed to Mr. Ichter this morning, I advised Mr.
Ichter that Defendants maintained the confidentiality
designation as to the following limited depositions and
exhibits:[5]

---

[1] For the Court's convenience, a copy of the Consent Protective
Order is attached hereto as Exhibit A.
[2] A copy of Mr. Ichter's letter to me of earlier today, in which
he refused to file confidential documents under seal, is
attached hereto as Exhibit B.
[3] See Exhibit A (Consent Protective Order), ¶ 11.
[4] A copy of Mr. Ichter's January 8, 2003 letter is attached
hereto as Exhibit C.
[5] A copy of my letter to Mr. Ichter of today is attached hereto
as Exhibit D.

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 3

> 1. John Kampfe deposition, in its entirety, including exhibits;[6]
>
> 2. Plaintiff's Exhibit 68, attached to Diana Myers individual deposition;
>
> 3. Moses Williams June 17, 2002 deposition, pages 285 and 286; and
>
> 4. William Boulware deposition, pages 182 and 183, and Defendants' Exhibit 2 attached thereto.

In a letter faxed to me later this morning, Mr. Ichter disputed that the above materials are confidential, and claimed that the Consent Protective Order does not govern the filing of dispositive motions.[7] See Exhibit B. Further, despite his obligation to file materials designated as confidential under seal unless he has obtained an order removing the designation, Mr. Ichter added that "we will file these materials on Monday, and they will not be filed under seal." Id. As discussed herein, Defendants properly designated the materials referenced-above as confidential, and these materials should remain confidential. These materials are discussed in more detail below.

With respect to John Kampfe's deposition and exhibits, Mr. Kampfe, the Corporate Controller and Chief Accounting Officer of Turner Broadcasting System, Inc. (TBS), testified on behalf of TBS in response to a 30(b)(6) notice directed to TBS. Mr. Kampfe testified on a variety of financial, accounting and internal operating issues. His testimony throughout the

---

[6] A copy of the transcript and exhibits to Mr. Kampfe's deposition is included with this letter.

[7] This claim is baseless. Paragraph 7 of the Consent Protective Order provides that "[p]rotected materials may not be filed in Court, whether separately or with or as part of pleadings or other court papers except under seal." Paragraph 19 provides that "[t]he provisions of this Order shall continue to be binding after the conclusion of this Litigation …."

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 4

deposition relates to TBS' and its subsidiaries' ongoing
internal operations, including sensitive and proprietary
accounting procedures, management issues, inter-company
transactions, budgeting processes, and other inter-company and
global financial issues.  Such information goes to the heart of
how TBS and its subsidiaries conduct business within the
company.  TBS does not publicly disclose this information, and
TBS has always deemed and continues to deem this information to
be confidential and proprietary.[8]

Plaintiff's Exhibit 68, attached to Diana Myers'
deposition, is a letter agreement between WCW and wrestler Terry
Bollea.[9]  The letter agreement requires the parties to keep the
terms and conditions of the agreement "strictly confidential."
See Exhibit E (Plaintiff's Ex. 68), § 11(F).  Because WCW is
required under the letter agreement to maintain the
confidentiality of this document, Defendants' confidentiality
designation is appropriate.

In Moses Williams' June 17, 2002 deposition, he discusses
alleged steroid use by a former WCW wrestler.  See Williams
Dep., pp. 285-86, a copy of which is attached hereto as Exhibit
F.  WCW designated this sensitive personal information
confidential to protect the privacy of the named wrestler.
Defendants submit that such designation remains appropriate.

In William Boulware's deposition, at pages 182 and 183, he
is examined regarding a settlement agreement between him and
TBS.  The agreement is attached to the deposition as Exhibit 2.[10]
This settlement agreement requires that the fact, amount and
terms of the agreement be kept confidential.  See Exhibit G

---

[8] If the Court requires addition information, Defendants can
provide evidence demonstrating that information contained in Mr.
Kampfe's deposition, and the exhibits thereto, is confidential
and proprietary.
[9] A copy of Plaintiff's Exhibit 68 is attached hereto as Exhibit
E.
[10] A copy of Boulware Exhibit 2 and the related testimony is
attached hereto as Exhibit G.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 5

(Boulware settlement agreement), p.4.  TBS has not publicly
disclosed this settlement and continues to deem such materials
confidential.

    Plaintiffs cannot offer any valid reason why such materials
should not remain confidential.  Nevertheless, Plaintiffs insist
on publicly filing these materials in violation of the Consent
Protective Order.  Plaintiffs' disregard of the procedures set
forth in the Consent Protective Order is flagrant and abusive,
and should not be permitted.

    For all of the reasons stated above, Defendants
respectfully request that the Court enter an Order (1) directing
Plaintiffs to comply with the Consent Protective Order; (2)
directing Plaintiffs to file all of the above-designated
materials, and any portion of their briefs or other filings
containing or disclosing the contents of such materials, under
seal; and (3) to grant such additional relief as the Court deems
appropriate.  I remain available to answer any additional
questions you have or to provide any additional information that
you need to resolve the issues presented.  We appreciate your
time and attention in this matter.

                            Respectfully yours,

                            Eric A. Richardson

Enclosures
cc:  Cary Ichter, Esq.
     Charles Gernazian, Esq.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 6

bcc: James A. Lamberth, Esq.
     Evan H. Pontz, Esq.
     David C. Vigilante, Esq.
     Andrea S. Townsend, Esq.



# EXHIBIT / ATTACHMENT

## _____A_____

(To be scanned in place of tab)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BOBBY WALKER,                           )
                                        )
                Plaintiff,              )
                                        )        CIVIL ACTION FILE
v.                                      )
                                        )        NO. 1:00-CV-0367-CC
WORLD CHAMPIONSHIP WRESTLING, )
INC. and TURNER SPORTS, INC.,           )
                                        )
                Defendants.             )
                                        )

## CONSENT PROTECTIVE ORDER

Discovery sought by the parties in the above-captioned case may involve

the production of documents and things containing confidential information and

witnesses whose testimony may concern matters that are of a confidential nature.

For good cause shown, pursuant to Federal Rules of Civil Procedure 26(c) and 29,

**IT IS HEREBY ORDERED THAT:**

1.

(a)     This Order governs the handling of all confidential documents,

testimony, responses to discovery requests and other information, including all

copies, excerpts and summaries thereof ("Material") produced, provided, or filed

by any of Plaintiffs in the above-captioned matters (collectively, "Plaintiffs"),

Defendant World Championship Wrestling, Inc. ("WCW"), Defendant Turner

0762615.04

-1-

Sports, Inc. ("Turner Sports"), and/or Turner Entertainment Group, Inc. ("TEG")

and any non-party during discovery or other proceedings in the above-captioned

cases (collectively, the "Litigation").

(b)     Any party or non-party may designate as "Confidential" any Material

which it in good faith believes constitutes or contains private medical information,

trade secrets or other confidential or proprietary business, commercial, financial,

research or development information of the party or non-party making the

designation. As used in this Order, "Confidential Material" means Material

designated as "Confidential" and any copies, excerpts, summaries or other

disclosure of the substance or contents of such Material.

## 2.

A producing party may designate documents and other information as

"Confidential" by marking the initial page of such documents or other information

"CONFIDENTIAL." All Material which cannot be conveniently designated in the

manner described above shall be designated by the producing party as

"Confidential" by informing the other parties in writing of such designation. A

producing party's designation of any Material as "Confidential" shall also render

"Confidential" any copies, excerpts, summaries or other disclosure of the

substance or contents of such Material.

0762615.04

3.

Disclosure of Confidential Material shall be restricted to:

(a)     The attorneys of record for the parties and other in-house counsel for the parties, including their parent corporations, successors or affiliates working on this matter, and employees of such attorneys to whom it is necessary that Confidential Material be shown for purposes of this Litigation;

(b)     The Court and its personnel;

(c)     Court reporters not employed by the Court;

(d)     Such other persons as hereafter may be designated by written stipulation of the parties, or by further order of the Court on motion by any party;

(e)     Persons retained by any party or its attorneys of record in this Litigation solely for the purpose of assisting in the preparation of this Litigation for trial, such as independent medical or technical experts, accountants, statisticians, economists, or other experts, including staff and support personnel of such persons to whom it is necessary that Confidential Material be shown for purposes of assisting in such preparation; and

(f)     Any person who is being questioned in a deposition or hearing if such person was a recipient, sender or creator of such Confidential Material, or if the attorney providing such Confidential Material to such person has a good faith belief that the person has sufficient knowledge of the subject matter of the

0762615.04

-3-

Confidential Material that questioning such person about such Confidential

Material will lead to the discovery of admissible evidence.

4.

Before Confidential Material may be disclosed to any person other than

those persons listed in paragraphs 3(a), 3(b), and 3(c) above, such person shall be

furnished with a copy of this Order, shall agree to be bound by the terms of this

Order, and shall execute an agreement in the form of Exhibit "A" attached hereto.

A copy of each such executed Agreement shall be retained by the attorneys of

record for the party that provides the information to the person until further order

of this Court.

5.

All Confidential Material produced by any party shall be carefully

maintained by each of the other parties to this Litigation so as to preclude access

by persons who are not qualified recipients of such Material.  Furthermore, no

person, firm, corporation, or other entity subject to this Order shall provide,

disclose, make available, or communicate Confidential Material to any person,

firm, corporation or other entity not expressly authorized by this Order to receive

such Material.  A party's use of its own Material which it produces or discloses in

this Litigation shall not be considered a violation of this Order.

0762615.04

-4-

6.

No person, firm, corporation, or any other entity entitled to receive

Confidential Material pursuant to paragraph 3 of this Order shall use such Material

in any manner whatsoever except for preparation for trial and any appeal in this

Litigation. All such persons and entities are barred from using Confidential

Material to further the business interests of any party hereto (other than the

prosecution of claims or preparation of defenses in this action by the parties) or

the business interests of any other person, firm, corporation or other entity.

7.

Protected materials may not be filed in Court, whether separately or with or

as part of pleadings or other court papers except under seal. Any party wishing to

make such a filing must first present a motion regarding the specific documents

sought to be filed under seal to the Court of its approval. (Approval of such a

motion will be greatly expedited if it is presented with the consent of all parties).

Upon approval by the Court, the protected materials shall be filed in a sealed

envelope or other appropriate container on which shall be endorsed the caption of

this lawsuit, the title of the court paper or a brief description of the enclosed

materials, the legend "Confidential-Subject to Court Order," and a statement to the

following effect:

> This envelope [or other container] contains documents filed in this
> case by [name of party]; it is not to be opened by, nor are the contents

0762615.05

-5-

to be displayed or revealed to, anyone other than authorized Court personnel, except upon order of the Court.

### 8.

With respect to testimony elicited at any deposition or hearing in this Litigation, whenever counsel for a party deems that any question or line of questioning calls for the disclosure of information that shall be subject to confidential treatment under the terms of this Order, counsel may designate on the record that such disclosure is Confidential Material. Following such designation, only the witness and persons allowed access to such Material by this Order may remain in attendance at any deposition or hearing. A party also may designate information disclosed at any deposition or hearing "Confidential" by notifying each party in writing of such designation within thirty (30) days of receipt of the transcript of any deposition, hearing or trial. Such designation shall state the specific page(s) and line(s) of each transcript containing such Confidential Material. The court reporter shall mark those portions of transcript(s) that are designated as containing Confidential Material and the cover of such transcript(s) with the appropriate legend.

### 9.

The provisions of this Order shall apply to pretrial proceedings and to the material produced in pretrial discovery but shall not affect the conduct of trial. Nothing herein shall preclude any party from making an application to the Court

0762615.05

concerning the handling or treatment of Material designated "Confidential" at trial in this action.

## 10.

Nothing herein shall prevent disclosure beyond the terms of this Order if the producing party consents in writing to such disclosure, or the Court, after notice to all parties of record, orders such disclosure.

## 11.

The parties to this Litigation shall not be obligated to challenge the proprietary of a designation of Material as "Confidential" at the time such designation is made by the producing party, and the failure to challenge any such designation shall not preclude a subsequent challenge by any party to such designation.  In the event any party to this Litigation disagrees at any stage of the proceeding with the designation by another party of any Material as "Confidential," the parties shall first try to dispose of such dispute in good faith on an informal basis.  If the dispute cannot be resolved informally, the party that objects to the designation may move the Court, upon notice to all parties, to remove or change the designation of any Material as "Confidential."

## 12.

Materials produced during the course of discovery in this litigation by any party or non-party prior to the entry of this Order by the Court shall be subject to

the provisions of this Order to the same extent as if such Order had been entered by the Court as of the date such Material was produced.

### 13.

At the request of a producing party, all documents and physical objects produced by the party in connection with this Litigation shall initially be considered, as a whole, to constitute Confidential Material subject to this Order. Prior to producing such documents or physical objects, the producing party shall notify the receiving parties of such initial designation.

### 14.

The entry of this Order shall not operate as a waiver by any party hereto of any objections to producing or providing any documents, information, or other materials for any grounds other than the presence of Confidential Material.

### 15.

The inadvertent or unintentional disclosure by a party or non-party of Material which is entitled to protection under this Order, regardless of whether the Material was designated as "Confidential" at the time of disclosure, shall not be deemed a waiver in whole or in part of a producing party's claim of confidentiality, either as to the specific Material disclosed or as to any other information relating thereto on the same or related subject matter.

0762615.05

16.

The inadvertent or unintentional production by a party or non-party of any privileged or otherwise protected information shall not be deemed a waiver or an impairment of any claim of privilege or protection, including, but not limited to, the attorney-client privilege and the protection afforded by the attorney work-product doctrine. Upon receiving notice from a producing party that privileged information, including copies or summaries thereof, has been inadvertently produced, all such privileged information shall be returned to the producing party within five business days of receipt of such notice. A party that returns privileged information after receipt of notice may retain information not claimed to be privileged that is sufficient to identify the document or other information that it returns. This paragraph shall not prejudice the right of any party to challenge a producing party's claim that information is privileged on any grounds other than the inadvertent or unintentional production of such information.

17.

Any of the notice requirements herein may be waived, in whole or in part, but only by a writing signed by the attorney of record for the person or entity against whom such waiver will be effective.

0762615.05

-9-

18.

Upon final termination of this Litigation, including all appeals, each party shall, within forty-five (45) days, return to the producing party, or at the producing party's request, destroy all Confidential Material produced by the other party, including any originals or reproductions of any such Material received or made by any other person pursuant to the terms of this Order.  Within forty-five (45) days of the final termination of this Litigation, each party also shall destroy, in whatever form stored or reproduced, all other Confidential Material, including, but not limited to, correspondence, computer data, memoranda, notes and other work product materials, in the control of any party or other person that received Confidential Material pursuant to the terms of this Order; provided, however, that counsel for the parties may retain their attorneys' notes and one copy of pleadings and depositions for archival purposes.

0762615.05

19.

The provisions of this Order shall continue to be binding after the conclusion of this Litigation, except that all of the parties may by stipulation modify or dissolve this Order and nothing contained in this Order shall prejudice the right of any party to seek an Order of this Court modifying or dissolving this Order. Such request for dissolution or modification of the Order may be made by any party at any time.

IT IS SO ORDERED, this 4th day of September, 2001.

Magistrate Judge
United States District Court for the
Northern District of Georgia, Atlanta
Division

0762615.05

-11-

CONSENTED TO:

MEADOWS, ICHTER & TRIGG, P.C.

CARY ICHTER
Georgia Bar No. 382515
KELLY JEAN BEARD
Georgia Bar No. 044380
MICHELLE M. ROTHENBERG
Georgia Bar No. 615680

Eight Piedmont Center
Suite 300
3525 Piedmont Road
Atlanta, GA 30305
(404) 261-6020

Attorneys for Plaintiff

TROUTMAN SANDERS LLP

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000
Fax: (404) 885-3995

Attorneys for Defendants

0762615.04

-11-

## EXHIBIT A

## AGREEMENT

_____ being duly sworn, hereby states as follows:

I reside at _____ in the City/County of _____ in the State of _____. I have read the Protective Order dated _____ am engaged as _____ on behalf of _____ _____ in the preparation and conduct of the litigation referenced in the Protective Order, or am otherwise allowed access to Confidential Material under the terms of the Protective Order. I am fully familiar with and agree to comply with and be bound by the provisions of the Protective Order. I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use except solely for the purposes of the above-referenced litigation, any Confidential Material obtained pursuant to the terms of the Protective Order, except as provided in the Protective Order. Upon being notified by counsel which provided Confidential Material to me of the termination of the above-referenced litigation, I will return all such Material to such counsel for handling in accordance with the terms of the Protective Order.

0762615.04

-1-

This _____ day of _____ 200__.

_____



# EXHIBIT / ATTACHMENT

## _____ B _____

(To be scanned in place of tab)

01/10/2003 10:55 FAX 404 261 3     MEADOWS,ICHTER&BOWERS         001

# MEADOWS, ICHTER & Bowers
FOURTEEN PIEDMONT CENTER, SUITE 1100
3535 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA 30305

404/261-6020
TELECOPIER: 404/261-3656

TO:                 Eric Richardson, Esq.

FIRM:               Troutman Sanders

FACSIMILE #:        (404) 962-6666

TELEPHONE #:

FROM:               Cary Ichter, Esq.

DATE:               January 10, 2003

RE:                 World Championship Wrestling, Inc.

                    2233

This facsimile is ____3____ page(s) (including this cover page)

## SPECIAL INSTRUCTIONS:

Please see attached.

This facsimile transmission contains confidential and/or legally privileged information and is intended only for
the use of the individual(s) named on the transmission sheet. If you are not the intended recipient, you are
hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents
of this facsimile transmission is strictly prohibited. If you have received this transmission in error, please notify
us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.

# MEADOWS, ICHTER & BOWERS
### ATTORNEYS AT LAW

14 PIEDMONT CENTER, SUITE 1100
3535 PIEDMONT ROAD
ATLANTA, GEORGIA 30305
TELEPHONE: 404-261-6020
FACSIMILE: 404-261-3656
http://www.mibiaw.com

January 10, 2003

**VIA FAX**
Eric A. Richardson, Esq.
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2218

Re:   WCW Consolidated Cases

Dear Eric:

Thank you for your letter of January 10, 2003. If you
wish to have any of the depositions or documents referenced
therein filed under seal, please file a motion with the
court regarding that matter. We do not believe that any of
the materials you identified are confidential and will not
consent to the filing of those materials under seal. We
will NOT file these materials under seal absent a Court
Order that we must do so. We are no longer in the
discovery phase of the case and do not believe that the
Protective Order covers a dispositive motion, which should
be a public document.

If you have a contrary position, you should file a
motion with the Court, but we will file these materials
Monday, and they will not be filed under seal. If we have
a hearing on this issue, we will petition the Court, as is
our right, to remove the confidentiality designation from
all of the materials identified in your letter.

Parenthetically, we also find it ironic, as have
others in the press, that an affiliate of a media company
would seek to have materials filed under seal. I take your
comments regarding the press in your letter to mean that
you do not want the press to see a copy of our response to
the motion for summary judgment.

Eric A. Richardson, Esq.
January 10, 2003
Page 2

MEADOWS, ICHTER & BOWERS

        If you would care to resolve this issue going forward,
if the Defendants were to agree to our terms of mediation,
we would agree to consent to file under seal any and all
documents for which WCW made such a request.

        I look forward to hearing from you with regard to this
matter.   If you have any questions or comments regarding
the foregoing, please give me a call.

                        Very truly yours,

                        Cary Ichter

CI/tms

cc : All Plaintiffs
     Charles J. Gernazian, Esq.
     Michelle Rothenberg-Williams, Esq.



# EXHIBIT / ATTACHMENT

## _____ C _____

(To be scanned in place of tab)

01/08/2003 16:51 FAX 404 261 3656      MEADOWS, ICHTER&BOWERS      ☒001

# MEADOWS, ICHTER & Bowers

EIGHT PIEDMONT CENTER, SUITE 300
3525 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA 30305

---

404/261-6020
TELECOPIER: 404/261-3656

| | |
|---|---|
| TO: | Eric Richardson, Esq. |
| FIRM: | Troutman Sanders |
| FACSIMILE #: | (404) 962-6666 |
| TELEPHONE #: | . |
| FROM: | Cary Ichter, Esq. |
| DATE: | January 8, 2003 |
| RE: | World Championship Wrestling, Inc. |

This facsimile is _____3_____ page(s) (including this cover page)

---

## SPECIAL INSTRUCTIONS:

Please see attached.

---

This facsimile transmission contains confidential and/or legally privileged information and is intended only for the use of the individual(s) named on the transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile transmission is strictly prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.

01/08/2003 16:51 FAX 404 261 3656        MEADOWS,ICHTER&BOWERS                    002

# MEADOWS, ICHTER & BOWERS

### ATTORNEYS AT LAW

EIGHT PIEDMONT CENTER, SUITE 300
3525 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA 30305
TELEPHONE: 404-261-6020
FACSIMILE: 404-261-3656
http://www.mibiaw.com

January 8, 2003

**VIA FAX**
Eric A. Richardson, Esq.
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2218

           Re:   WCW Consolidated Cases; Huffman and Miller

Dear Eric:

     Thank you for your letter of January 8, 2003.  We too
remain interested in initiating a dialogue to move us
toward settlement of all of the above-referenced cases.
Although I believe that you are genuinely interested in
settlement, I am not so sure about your clients.  I have
been through far too many pointless mediations to want to
spin my wheels at one related to these cases—particularly
given the amount of time and effort that would go into such
a mediation.  The demand for a down payment was to test
your clients' true intent and interest in mediation, and
they flunked.

     We are far along in our preparation of our summary
judgment response briefs for Walker, Norris and Onoo.  When
you see them, you will understand why we are not concerned
about summary judgment.  And, as I mentioned, our jury
research, which we began in November, indicates that these
cases have substantial upside potential.  Hence, while we
are interested in settlement, we are not obsessing about
it.

     We will not go to mediation without the Defendants
making a good faith down payment toward settlement ahead of
time.  I am amenable to discussing the amount, but I am not
going to bid against myself.  Minimally, any such payment
will have to include paying all costs of the mediation, our

01/08/2003 18:52 FAX 404 261 1856      MEADOWS, ICHTER&BOWERS                    @003

Eric A. Richardson, Esq.                    MEADOWS, ICHTER & BOWERS
January 8, 2003
Page 2

expenses in the case to date, which are at about $115,000,
plus a meaningful good faith payment to each plaintiff.  If
your clients are not interested in that, then I take that
to mean they are not interested in settlement.

    Just to give you a heads up, we expect to file most of
the depositions we have taken in the case with the
responses on Monday.  Neither our response briefs nor the
depositions will be filed under seal.  If you wish to
maintain the confidentiality of any of those depositions or
the exhibits attached thereto, please let me know as soon
as possible.  At this point, I know we will at minimum file
the following transcripts: Norris, Walker, Onoo, Bischoff,
Juster, Davis, Anderson, Myers (individual and 30(b)(6)),
Snakovsky, Bruce, Kampfe, Sullivan, Schiavone, Orndorff,
Morrison (Dillon), Hamilton, Smith, Carr, Patterson,
Boulware, Hart, Bayens, Miller, Williams, Kearce, and all
of the exhibits attached to each of those depositions.

    Also, I have been contacted by the Fulton County Daily
Report and the Atlanta Business Chronicle about the status
of these cases.  They are updating previous stories.  They
have both asked for copies of everything we are going to
file in connection with the summary judgment motions.
Please let me know if your clients object to me sending
them a copy, rather than requiring them to obtain a copy of
the court file.  They have already told me they are willing
to get the court file.

    I look forward to hearing from you with regard to this
matter.  If you have any questions or comments regarding
the foregoing, please give me a call.

                        Very truly yours,


                        Cary Ichter

CI/tms

cc : All Plaintiffs
     Charles J. Gernazian, Esq.
     Michelle Rothenberg-Williams, Esq.



# EXHIBIT / ATTACHMENT

## _____D_____

(To be scanned in place of tab)

# Confirmation Report—Memory Send

```
Time     : Jan-10-2003  09:32
Tel line 1 : +4048853900
Tel line 2 : +4048853900
Name     : TROUTMAN SANDERS
```

| | | |
|---|---|---|
| Job number | : | 672 |
| Date | : | Jan-10 09:31 |
| To | : | 94042613656 |
| Document Pages | : | 003 |
| Start time | : | Jan-10 09:31 |
| End time | : | Jan-10 09:32 |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 672              **\*\*\* SEND SUCCESSFUL \*\*\***

CONFIDENTIAL

# Troutman Sanders LLP
### ATTORNEYS AT LAW
*A Limited Liability Partnership*
BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA  30308-2216
www.troutmansanders.com
FACSIMILE: 404-885-3900

## FACSIMILE TRANSMITTAL

| SENDER'S DIRECT DIAL NO. | SENDER'S DIRECT FACSIMILE NO. | FLOOR |
|---|---|---|
| 404-885-3496 | 404-962-6666 | |

| | | | |
|---|---|---|---|
| **Date:** | January 10, 2003 | | |
| **To:** | Cary Ichter, Esq | **Operator:** | Deborah |
| **Firm:** | Meadows, Ichter & Bowers, P.C. | **Recipient #:** | |
| **Fax #:** | 404-261-3656 | | |
| **From:** | Eric A. Richardson | | |

**Subject:**

> **Number of pages including this cover sheet — 3**
> If all pages are not received, please call 404-885-3211.

**Original Will Not Be Sent**

**\*\*\* COMMENTS \*\*\***

The information which follows and is transmitted herewith is attorney/client privileged, trade secret and/or confidential information intended only for the viewing and use of the individual recipient named above. If the reader of this message is not the intended recipient, you are hereby notified that any review, use, communication, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U. S. Postal Service or Overnight Delivery Service at our expense. Thank you.

# TROUTMAN SANDERS LLP

**A T T O R N E Y S   A T   L A W**
A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Eric A. Richardson
eric.richardson@troutmansanders.com

Direct Dial: 404-885-3496
Direct Fax: 404-962-6666

January 10, 2003

## VIA FACSIMILE AND U.S. MAIL

Cary Ichter, Esq.
Meadows, Ichter & Bowers, P.C.
Eight Piedmont Center, Suite 300
3525 Piedmont Road, N.E.
Atlanta, GA 30305

RE:   <u>Walker v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-0367-CC;
<u>Onoo v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-0368-CC;
<u>Norris v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-0369-CC;
<u>Easterling v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-1715-CC;
<u>Davis v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-1716-CC;
<u>Worthen v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-1717-CC;
<u>Speight v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-1718-CC;
<u>Saengsiphan v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-1719-CC;
<u>Reeves v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:00-CV-1720-CC;
<u>Patterson v. World Championship Wrestling, Inc., et al.</u>, Civ. File No. 1:01-CV-1152-CC;

Dear Cary:

This responds to your letter dated January 8, 2003 regarding the filing of original depositions in the above-referenced cases.

We are reviewed the depositions (and the exhibits attached thereto) referenced in your letter. With respect to Norris, Walker, Onoo, and Davis, we have already filed those depositions in accordance with the parties' agreement and/or Judge King's instructions. With respect to the remaining depositions referenced in your letter, we maintain the confidentiality designation as to the following depositions and exhibits:

1.   John Kampfe deposition, in its entirety, including exhibits;

2.   Plaintiff's Exhibit 68, attached to Diana Myers individual deposition (Terry Bollea letter agreement);

ATLANTA • HONG KONG • LONDON • NORFOLK • RICHMOND
TYSONS CORNER • VIRGINIA BEACH • WASHINGTON, D.C.

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 2

3.   Moses Williams June 17, 2002 deposition, pages 285 and 286 (discussing alleged steroid use by a wrestler);

4.   William Boulware deposition, pages 182 and 183, and Defendants' Exhibit 2 attached thereto (Boulware Settlement Agreement, and testimony relating thereto);

As you know, because the above-referenced deposition testimony and exhibits remain designated as confidential, pursuant to the Consent Protective Order, you must file the above materials and any part of your briefs containing portions of those materials under seal. We will, of course, consent to a motion to file the above-designated deposition testimony and exhibits under seal.

To the extent that Defendants have designated as confidential any of the remaining deposition testimony and attached exhibits referenced in your letter, Defendants now withdraw that designation.

With respect to communications with the press, we remind you of your obligations under the Consent Protective Order and the rules of this Court, and Judge King's previous discussions with you on this subject, and expect that you will govern yourself accordingly.

I am available to discuss any of the above if you have any questions or comments.

Very truly yours,

Eric A. Richardson

cc:   Charles Gernazian, Esq.
James A. Lamberth, Esq.
Evan H. Pontz, Esq.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

January 10, 2003
Page 3

bcc:    David C. Vigilante, Esq.
        Andrea S. Townsend, Esq.



# EXHIBIT / ATTACHMENT

## E

(To be scanned in place of tab)



**WCW WORLD CHAMPIONSHIP WRESTLING**℠
A Time Warner Company

A DIVISION OF TURNER SPORTS
ONE CNN CENTER, Box 105366, Atlanta, GA 30348-5366
(404) 603-3123

May 29, 1998

> **PLAINTIFF'S EXHIBIT**
> 68

Mr. Terry Bollea
130 Willadel Drive
Belleair, FL 34616

Re:     **LETTER OF AGREEMENT**

Dear Terry:

This letter will confirm the principal terms and conditions of the parties, World Championship Wrestling, Inc. ("WCW") and Terry Bollea p/k/a "Hulk Hogan" ("Bollea") to enter into an agreement to renew and extend the October 15, 1996 Letter of Agreement between the parties.

1.      **TERM:** Unless otherwise extended or terminated pursuant to the terms and conditions herein, the term of this Agreement shall begin on May 29, 1998 and shall continue for a period of four (4) years through May 28, 2002 (the "Term").

2.      **BONUS:** In consideration of Bollea's performance hereunder, WCW shall pay to Bollea a bonus in the amount of Two Million Dollars ($2,000,000) to be paid within fourteen (14) days after Bollea's execution and delivery of this Letter of Agreement (the "Agreement") to WCW.

3.      **PAY PER VIEW EVENTS**

A. Bollea will promote, appear, wrestle and perform at six (6) pay per view ("PPV") events (the "Events") per year during Years One (1) through Three (3) of this Agreement. Bollea will be the featured wrestler at each of the Events.

B. In consideration for Bollea's participation in the Events, WCW shall compensate Bollea the greater of Fifteen percent (15%) of One Hundred percent (100%) of domestic PPV cable sales received by WCW for each Event or a Six Hundred Seventy-Five Thousand Dollars ($675,000) guarantee payment (the PPV Guarantee Payment) per Event.

C. WCW shall pay Bollea One Million Three Hundred and Fifty Thousand Dollars ($1,350,000) on July 1, November 1 and February 1 of Years One (1) through Three (3) of this Agreement as an advance of the PPV Guarantee Payment.

D. In addition to the above PPV Guarantee Payment, WCW shall pay Bollea for each PPV Event in which he so participates, pursuant to the following "Incentive Compensation" schedule:

WCW 015754
CONFIDENTIAL

| Buy Rate of | 1.5 to 1.79: | $ | 250,000 per event |
|---|---|---|---|
| | 1.8 to 1.99: | | 375,000 per event |
| | 2.0 to 2.49: | | 500,000 per event |
| | 2.5 to 2.99: | | 850,000 per event |
| | 3.0 to 3.49: | | 1,250,000 per event |
| | 3.5 + | | 1,750,000 per event |

E. Incentive Compensation payments and adjustments to the PPV Guarantee Payment based on PPV domestic cable sales shall be calculated at sixty (60) days after the PPV event and monthly thereafter. Incentive Compensation and adjustment payments due, if any, shall be made within ten (10) days of the calculation dates.

## 4.   WCW NITRO AND THUNDER APPEARANCES

During Years One (1) through Three (3) of this Agreement, Bollea shall promote, appear, wrestle and perform as requested by WCW at WCW *Nitro* and WCW *Thunder* events. In consideration for Bollea's participation in any such events, WCW shall pay Bollea twenty-five percent (25%) of the gross (after tax) arena ticket revenues for each WCW *Nitro* and/or WCW *Thunder* in which he appears and wrestles, however, in no event will Bollea's compensation be less than Twenty-Five Thousand Dollars ($25,000) per event. Such amounts will be paid to Bollea on the next regularly scheduled WCW talent pay date for the period within which the *Nitro* or *Thunder* occurs.

## 5.   "TELEVISION TAPING" PARTICIPATION

During Years One (1) through Three (3) of this Agreement, Bollea will appear and perform at sixteen (16) mutually agreed upon WCW "Television Tapings" during each calendar year of the Term. Bollea's appearance and/or participation at such tapings shall be at no additional cost to WCW.

## 6.   NON-TELEVISED HOUSE SHOWS

During Years One (1) through Three (3) of this Agreement, Bollea will appear and perform at a reasonable number of non-televised house shows as reasonably requested by WCW. In ~~consideration for Bollea's participation in any non-televised house shows, WCW shall~~ compensate Bollea twenty-five percent (25%) of the gross (after tax) arena ticket revenues for ~~each non-televised house show in which Bollea appears and performs. Payment to Bollea for~~ any non-televised house shows shall be paid within thirty (30) days from the date of the house show. Such amounts will be paid to Bollea on the next regularly scheduled WCW talent pay date for the period within which the non-televised house show occurs.

## 7.   INTERNATIONAL ARENA DATES

During the Term of this Agreement, WCW and Bollea shall have a "mutual option" for Bollea to promote, appear, wrestle and perform in mutually agreeable International arena events. For

WCW 015755
CONFIDENTIAL

purposes of this section, a "mutual option" shall mean that either party may propose terms for Bollea's participation in such events and the other party may accept or reject such proposal. In the event the parties reach agreement on Bollea's participation therein, such agreement shall be reflected in a separate writing signed by the parties.

## 8.  YEAR 4 COMPENSATION

WCW shall compensate Bollea a One Hundred Thousand Dollars ($100,000) consultant fee for Year Four (4) of this Agreement. In the event that Bollea provides any wrestling services in Year Four (4), Bollea shall be entitled to compensation on a per event basis according to the pay structure set forth in sections 3,4,5,6 and 7.

## 9.  MERCHANDISING/LICENSING ACTIVITIES

A. Except for those specific Titan merchandising items that Bollea's counsel has previously disclosed in w; 'ting and as otherwise provided herein, Bollea grants WCW the exclusive (including to the exclusion of Bollea) worldwide merchandising and licensing rights to Bollea's name, image, likeness, voice, characters and any and all of Bollea's other distinctive and identifying indicia as used by or associated with Bollea only in the business of professional wrestling ("Bollea's "Intellectual Property"):

1.      For use in connection with wrestling related merchandise sold via company owned retail stores, catalog, telemarketing, Compuserve/Internet and related sources (on a non-exclusive basis) and at arenas or related events;

2.      For use in connection with the continuation of those products or services set out in the specific license agreements previously entered into by WCW (as noted in the attached list);

3.      For use in connection with those wrestling related products or services set out in any license agreements entered into by WCW during the Term of the second Renewal Agreement. WCW will not enter into license agreements for products or services which may be covered by any license agreement entered into by Bollea (provided WCW has prior written notice of such from Bollea).

~~4.      For use in connection with WCW's exploitation in the area of motorsports, which~~ currently includes NASCAR racing and Monster Trucks;

5.      For use in connection with WCW's exploitation of 900#/call-in telephone lines (as provided in paragraph 9F below).

B. To the extent WCW enters into any license agreement as provided herein, WCW shall furnish to Bollea all such merchandising and licensing materials and items for Bollea's approval (not to be unreasonably withheld or delayed) with respect to the creative portrayal of Bollea's Intellectual Property on such materials and items. WCW warrants that it shall not enter into merchandising or licensing projects utilizing the Intellectual Property which might denigrate or

WCW 015756
CONFIDENTIAL

adversely affect Bollea. WCW acknowledges that Bollea retains the right to exploit his name, image, likeness, voice and character (specifically excluding any WCW trademarks or service marks including but not limited to WCW and NWO) in connection with non-wrestling related merchandising and licensing including, but not limited to, pasta, pasta restaurants, sandwiches, sun tan oil, health drink mixers, vitamins and merchandise related to Bollea's movies, television movies and non-wrestling television appearances.

C. Bollea shall receive a royalty of fifty percent (50%) of the Net Receipts (as defined herein) received by WCW on all merchandise sold directly by WCW to any consumer incorporating "Hulk Hogan," "Hollywood Hogan" or Bollea's name, likeness or character. Net Receipts shall be defined as gross receipts less actually incurred out of pocket expenses associated with the manufacture and sale of such merchandise. In the event Bollea's name, likeness or character are used herein in conjunction with other names, likenesses or characters, Bollea shall receive fifty percent (50%) of the pro rata portion of the Net Receipts received by WCW.

D. Bollea shall receive a royalty of fifty percent (50%) of the Actual License Fees (as herein defined) received by WCW on the licensing of "Hulk Hogan" or Bollea's name, likeness or character. Actual License Fees shall be defined as license fees actually received after distributor fees and direct expenses actually incurred and not to exceed fifty percent. In the event Bollea's name, likeness or character are used herein in conjunction with other names, likenesses or characters, Bollea shall receive fifty percent (50%) of the pro rata portion of the Actual License Fees received by WCW.

E. During the period in which Bollea is a member of the New World Order ("NWO"), Bollea will receive a promotional fee for promoting the NWO (wearing the name while wrestling, on-air, in photo shoots, etc.) of Twenty Thousand Dollars ($20,000) per month. The foregoing notwithstanding, in no event will Bollea's annual promotional fee as herein provided be less than twenty-five percent (25%) of WCW's Net Receipts and Actual License Fees (as provided in C and D above) for generic non-talent specific NWO merchandise. Any adjustments to the promotional fee as herein provided, shall be calculated on a quarterly basis (ie., March 31, June 30, September 30 and December 31) to be paid within twenty (20) days from the end of each such quarter.

F. Should WCW create a 900#/call-in hotline featuring "Hulk Hogan" or "Hollywood Hogan" and should Bollea be available to provide recordings for said 900#, Bollea shall receive one hundred percent (100%) of WCW's Net Revenues (as herein defined) from Bollea's feature(s) on such Hotline. "Net Revenues" are defined as actual revenues received and retained by WCW and generated by domestic 900# hotline sales.

G. Any payments due to Bollea pursuant to sections 9C, 9D and 9F, shall be calculated on a quarterly basis and paid within twenty (20) days after the end of each quarter. Any payments due under this subparagraph shall be accompanied by a royalty statement.

H. Bollea shall not be entitled to any share of any revenues derived by WCW from the sale or other exploitation of the Intellectual Property in connection with (i) any wrestling magazine published and distributed by WCW (or its licensees), or (ii) the sale or licensing in any medium, market or form of videocassettes of any wrestling matches or other events sponsored by WCW.

WCW 015757
CONFIDENTIAL

## 10. CONDITIONS PRECEDENT

In addition to the other conditions contained herein, the parties' obligations to enter into this Agreement shall be specifically contingent upon:

A. WCW's receipt of an agreement from Marvel, satisfactory to WCW, extending through the term of this Agreement and authorizing Bollea to promote, appear, wrestle and otherwise perform his obligations hereunder (including merchandising and licensing) utilizing the name "Hulk Hogan" (and to allow WCW to do the same). WCW shall use its best efforts to negotiate such an agreement with Marvel, however, WCW shall have no authority to commit or bind Bollea without Bollea's written consent. In the event an agreement with Marvel satisfactory to WCW is concluded: (i) such agreement shall be incorporated in this Agreement by reference, and (ii) Bollea shall represent and warrant in this Agreement that no third party has any ownership interest in any name or trademark which would preclude or restrict the use of "Hulk Hogan" as contemplated hereunder, except for previously disclosed Titan merchandising items.

B. Bollea's submission to a drug test pursuant to WCW's Substance Abuse Policy, which Bollea agrees he has received and reviewed, and a finding based on such test indicating that Bollea is not currently using any illegal drugs, steroids or other substances prohibited by WCW.

## 11. ADDITIONAL TERMS AND CONDITIONS

A. Bollea shall represent and warrant, inter alia, that he has the full right, authority and ability to promote, appear, wrestle and perform, and to otherwise perform his obligations, all as contemplated herein, and that the execution, delivery and performance of this Agreement has been consented to and authorized by all individuals or entities required to consent to and authorize the same, will not contravene any law, regulation judgment or decree applicable to Bollea, and will not cause or result in a breach of or default under any other agreement, contract or understanding to which Bollea is a party, or require any payment by WCW under such, including without limitation that certain letter agreement between Bollea, Titan Sports and Marvel dated March 25, 1985 (the "Marvel Agreement"), the Merchandising Agreement between Bollea and Titan Sports dated January 1, 1985 and the letter agreement between Bollea and Titan Sports dated November 20, 1992 (collectively the "Titan Agreements"). Such representations and warranties shall be supported by indemnification by Bollea acceptable to WCW.

B. WCW shall have the right of first negotiation (to last no longer than fourteen (14) days following the end of the Term) for Bollea's wrestling and wrestling related services for the twelve (12) month period following the termination of this Agreement.

C. When required to travel for WCW as contemplated hereunder, Bollea will receive first-class air travel, first-class suite hotel accommodations, limousine transportation and One Hundred Seventy-Five Dollars ($175.00) per diem.

D. Except as specifically provided in this paragraph, during the Term, Bollea shall not, directly or indirectly, be employed by, perform services for, grant similar rights and/or licenses to, or

WCW 015758
CONFIDENTIAL

engage or be connected in any manner with any other individual, entity or business of the wrestling type engaged in or conducted by WCW, without advance written approval of the President of WCW. WCW acknowledges that Bollea has an existing motion picture and television career and, to the extent reasonably possible, Bollea shall have consultation rights with respect to the timing of WCW wrestling activities involving Bollea hereunder.

E. Bollea shall have approval over the outcome of all wrestling matches in which he appears, wrestles and performs, such approval not to be unreasonably withheld.

F. The parties shall use their respective best efforts to keep the terms and conditions of this Agreement strictly confidential.

G. This Letter of Agreement shall be governed and construed pursuant to the laws of the State of Georgia applicable to contracts made and to be wholly performed within Georgia.

The terms and conditions referenced above shall be binding upon the parties until a full Independent Contractor Agreement and Merchandising Agreement and all other necessary documents are executed and delivered. This letter supercedes all previous correspondence and agreements regarding the subject matter herein including but not limited to the letter of agreement between Bollea and WCW dated October 15, 1996.

If the foregoing accurately sets forth your understanding of our respective present intentions, please so indicate by signing and returning a copy of this letter to us.

Sincerely,

WORLD CHAMPIONSHIP WRESTLING, INC.

By _____
Dr. Harvey Schiller
President, Turner Sports

AGREED TO AND ACCEPTED this 2ⁿᵈ day of June 1998.

TERRY BOLLEA p/k/a "Hulk Hogan"

_____
Terry Bollea

WCW 015759
CONFIDENTIAL



**A Time Warner Company**

**A DIVISION OF TURNER SPORTS**
ONE CNN CENTER, Box 105366, Atlanta, GA 30348-5366
(404) 603-3123

## FACSIMILE MAIL

June 30, 1998

Mr. Terry Bollea
130 Willadel Drive
Belleair, FL 34616

Henry Holmes, Esquire
Weissman & Wolff
9665 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212

Re:   Attachment to Letter of Agreement

Dear Terry and Henry:

Pursuant to section 9A(2) of your Letter of Agreement, attached is a copy of the
categories within which WCW is presently licensing the WCW and wrestler trademarks.

If you have any questions, please feel free to call.

Sincerely,

Diana L. Myers
Legal Affairs

Enclosure

WCW 015760
CONFIDENTIAL

# WCW LICENSED PRODUCTS

| | |
|---|---|
| Calling Cards | Wrestling rings |
| Photo Plaques | Inflatables |
| Collector Plates | Kites |
| Sculptures | 3-D Keychains |
| Clocks | Backpacks |
| Wall Art | Rainwear |
| Action Figures | Rolling Luggage |
| Video Games | Belts |
| Pennants | Suspenders |
| Bumper Stickers | T-shirts |
| Signs | Ski Caps |
| Key Rings | Baseball hats |
| Collector Pins | Bandannas |
| Buttons | Trading cards |
| Decals | Talking Trading Cards |
| Seat Cushions | Sweatshirts |
| Magnets | Knit Shirts |
| 1:444, 1:64, 1:24 Die Cast | Patches |
| LCD Games | Tank Tops |
| Temporary Tattoos | Muscle Shirts |
| Flags | Henley Shirts |
| Glass Mugs | Long Sleeve Shirts |
| Playsets | Beach Towels |

WCW 015761
CONFIDENTIAL

# NEW LICENSED PRODUCTS

Bath Towels

Bath Mats

Shower Curtains

Mug-T (T-Shirt in a Mug)

Gumball machines

Gumball Toppers

Box Calendars

Calendars

Boxer Shorts

Work-out wear

Polo Shirts

Rag Tops

Footwear

Balloons

Cookie Jars

Commemorative Stamps

Hot Sauces

Thumb Puppets

Painted Balls

Pop-up cards

Books

Kaleidoscopes

Lenticular products

Watches

Halloween Costumes

Valentines

Bowling League (bowling balls, shirts, hats)

Theme Restaurant

Credit Cards

Wrestle Buddies

Posters

Toy Vehicles

Convenient Stores

Bendables

WCW 015762
CONFIDENTIAL



# EXHIBIT / ATTACHMENT

## F

(To be scanned in place of tab)

Page 1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
2                   ATLANTA DIVISION

3   DAVIS v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO.  1:00-CV-1716-CC;
4   SAENGSIPHAN v. WORLD CHAMPIONSHIP WRESTLING, INC. and
    TURNER SPORTS, INC., CIV. FILE NO. 1:00-CV-1719-CC;
5   SPEIGHT v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO. 1:00-CV-1718-CC;
6   WORTHEN v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO. 1:00-CV-1717-CC;
7   REEVES v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO. 1:00-CV-1720-CC;
8   EASTERLING v. WORLD CHAMPIONSHIP WRESTLING, INC. and
    TURNER SPORTS, INC., CIV. FILE NO. 1:00-CV-1715-CC;
9   ONOO v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO. 1:00-CV-0368-CC;
10  NORRIS v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO. 1:00-CV-0369-CC;
11  WALKER v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC., CIV. FILE NO. 1:00-CV-0367-CC;
12  PATTERSON v. WORLD CHAMPIONSHIP WRESTLING, INC. and TURNER
    SPORTS, INC. and TURNER ENTERTAINMENT GROUP, INC.,
13  CIV. FILE NO. 1:01-CV-1152-CC;

14  _____
                 DEPOSITION OF MOSES WILLIAMS
15                     MAY 28, 2002
                       3:30 P.M.
16  _____

17

18

19

20

21

22

23

24

25              CERTIFIED COURT REPORTERS

1   top.

2          Q       Were any of these that were the regular

3   users, were any of them African American?

4          A       We had, I don't think we had any

5   Afro-American guys there that used illegal steroids.  We

6   had, we did have several of the white wrestlers who used a

7   lot of steroids.  And it was no secret about it.  They just

8   had to be clean for the urinalysis.  That's all.  They had

9   to test negative at whatever cost.

10         Q       And none of this category were African

11  American?

12                 (Whereupon, the following testimony is

13          contained in the confidential transcript.)

14         A       No.  We had one incident where Van Hammer

15  tested positive, even after everybody had been warned that

16  there was going to be a test.  He's a Caucasian wrestler.

17  He tested positive.  And --

18         MR. RICHARDSON:  Before we go on, I think we're

19  getting into probably some sensitive --

20         MR. GERNAZIAN:  Then let's move on.

21         MR. RICHARDSON:  -- medical information --

22         MR. GERNAZIAN:  That's fine.

23         MR. RICHARDSON:  -- on specific wrestlers.  I mean,

24  I would say, if we were going to discuss this, then we'd

25  better designate it confidential.

1           I don't object to you asking the questions

2   and him answering them.  But I think, just for the

3   protection of the wrestlers, that any discussion we have

4   about specific names be treated as confidential.

5   BY MR. GERNAZIAN:

6           Q     Go ahead.

7           A     So the company sent him to rehab and paid

8   for it.  So he went to rehab.  And I mean, it's pretty much

9   a matter of public record, because he came out of rehab and

10  he tested positive again.

11          And he went back.  And then the next time,

12  his doctor, his wife and himself were all indicted for

13  trafficking illegal steroids.  But he was never fired as a

14  result of the use of it.

15          Q     You had talked about three professional

16  sports players, Reggie White, Dennis Rodman and Karl

17  Malone?

18          A     Uh-huh.

19          Q     What is the race of each one of those

20  individuals?

21          A     All of them are Afro-American.

22          Q     And what is the race of Mr. Arquette, the

23  actor you referred to?

24          A     He's Caucasian.

25          (Whereupon, testimony designated



# EXHIBIT / ATTACHMENT

## _____G_____

(To be scanned in place of tab)

# PREVIOUSLY FILED UNDER SEAL.

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walker v. World Championship Wrestling, Inc., Turner Sports,
     Inc. and Turner Broadcasting System, Inc., Civ. File No.
     1:00-CV-0367-CC
Onoo v. World Championship Wrestling, Inc., Turner Sports, Inc.
     and Turner Broadcasting System, Inc., Civ. File No. 1:00-
     CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner Sports,
     Inc. and Turner Broadcasting System, Inc., Civ. File No.
     1:00-CV-0369-CC
Easterling v. World Championship Wrestling, Inc. and Turner
     Sports, Inc. and Turner Broadcasting System, Inc., Civ.
     File No. 1:00-CV-1715-CC
Davis v. World Championship Wrestling, Inc. and Turner Sports,
     Inc. and Turner Broadcasting System, Inc., Civ. File No.
     1:00-CV-1716-CC
Worthen v. World Championship Wrestling, Inc. and Turner Sports,
     Inc. and Turner Broadcasting System, Inc., Civ. File No.
     1:00-CV-1717-CC
Speight v. World Championship Wrestling, Inc. and Turner Sports,
     Inc. and Turner Broadcasting System, Inc., Civ. File No.
     1:00-CV-1718-CC
Saengsiphan v. World Championship Wrestling, Inc. and Turner
     Sports, Inc. and Turner Broadcasting System, Inc., Civ.
     File No. 1:00-CV-1719-CC
Reeves v. World Championship Wrestling, Inc. and Turner Sports,
     Inc. and Turner Broadcasting System, Inc., Civ. File No.
     1:00-CV-1720-CC
Patterson v. World Championship Wrestling, Inc., Turner Sports,
     Inc., Turner Entertainment Group, Inc. and Turner
     Broadcasting System, Inc., Civ. File No. 1:01-CV-1152-CC

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of

*DEFENDANTS RESPONSE TO PLAINTIFFS' SECOND MOTION*

*TO REMOVE CONFIDENTIALITY DESIGNATION* upon the interested

parties by depositing a copy of same in the U.S. Mail, properly addressed with adequate postage, to:

> Cary Ichter
> Charles J. Gernazian
> Michelle M. Rothenberg-Williams
> MEADOWS, ICHTER AND BOWERS, P.C.
> Fourteen Piedmont Center, Suite 1100
> 3535 Piedmont Road
> Atlanta, GA  30305

This 29th day of January, 2003.

Eric A. Richardson