ORIGINAL
FILED IN ___ 'S OFFICE
U.S. ___

APR 0 2 2003

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Worthen v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1717-CC;
Speight v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1718-CC;
Easterling v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1715-CC

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF AND TO SUPPLEMENT THE RECORD WITH DECLARATION OF ELVIN CARTER

COME NOW Plaintiffs William Worthen, Lester Speight and

Darron Easterling, and hereby move the Court for leave to file

their Supplemental Brief and to supplement the record, showing

the Court as follows:

### SUPPLEMENTAL BRIEF:

1.

Pursuant to this Court's Scheduling Orders, Defendants have

filed Motions for Summary Judgment in all of the above-

referenced cases.  Each Plaintiff has filed Responsive pleadings

as to each of the Motions, and Defendants have filed Reply

Briefs as to all cases.

2.

Defendants have challenged Plaintiffs' statistical

evidence, in their Reply Briefs, and rely on a report submitted

by David W. Peterson, Ph.D, which address Plaintiffs' expert

report but does not provide any separate statistical analysis.

3.

Plaintiffs are confident that, based on existing case law (at the time they filed their Responses), this Court is required to consider all of Plaintiffs' statistical evidence. Nevertheless, Plaintiffs have recently identified persuasive authority regarding some of Defendants' objections to Plaintiffs' statistical evidence.

4.

Specifically, the United States Court of Appeals For The Second Circuit recently issued the decision of Malave v. Potter, 2003 U.S. App. LEXIS 3024 (2nd Cir. 2003), which addressed a trial court's dismissal of a plaintiff's statistical evidence. A copy of the Malave decision is attached as Exhibit A.  A copy of Plaintiffs' proposed brief regarding the Malave decision is attached hereto as Exhibit B.

**SUPPLEMENTAL EVIDENCE:**

5.

Subsequent to receiving this Court's Scheduling Order and prior to filing their Responses to Defendants' Motions for Summary Judgment, the undersigned counsel's law firm moved its office (during the last week of 2002).

6.

Unfortunately, during the move, Plaintiffs' counsel overlooked one of the declarations that counsel had obtained by a witness named Elvin Carter. Mr. Carter has been sufficiently identified by Plaintiffs, and Plaintiffs provided Defense Counsel with a copy of the very Declaration that Plaintiffs now seek to file. (See December 12, 2002 letter, attached as Exhibit C).

7.

Plaintiffs, therefore, respectfully request permission for leave to file the Declaration of Elvin Carter in order to supplement the evidentiary record that Plaintiffs have provided the Court with respect to Defendants' pending Motions for Summary Judgment. A copy of the Declaration is attached as Exhibit D to this Motion.

WHEREFORE, Plaintiffs Willie Worthen, Lester Speight and Darron Easterling hereby move this Court to allow them to file a supplemental brief, as well as respectfully request leave to file the Declaration of Elvin Carter to supplement the record.

Respectfully submitted this $\underline{1^{st}}$ day of April, 2003.

Cary Ichter
Georgia Bar No. 382515
Charles J. Gernazian
Georgia Bar No. 291703
Michelle M. Rothenberg-Williams
Georgia Bar No. 615680

- 3 -

**MEADOWS, ICHTER & BOWERS, P.C.**
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305
Telephone:  (404) 261-6020
Telecopy:   (404) 261-3656



# EXHIBIT / ATTACHMENT

### (To be scanned in place of tab)

Source: Legal > Cases - U.S. > Federal Cases, Combined Courts ⓘ
Terms: malave potter (Edit Search)

✐ Select for FOCUS™ or Delivery
☐

*320 F.3d 321; 2003 U.S. App. LEXIS 3024, \*;*
*91 Fair Empl. Prac. Cas. (BNA) 101*

JESUS **MALAVE,** Plaintiff-Appellant, -v.- JOHN E. **POTTER,** POSTMASTER GENERAL,
Defendant-Appellee.

No. 01-6263

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

320 F.3d 321; 2003 U.S. App. LEXIS 3024; 91 Fair Empl. Prac. Cas. (BNA) 101

October 2, 2002, Argued
February 20, 2003, Decided

**PRIOR HISTORY: [\*1]** Plaintiff appeals from summary judgement entered in the United
States District Court for the District of Connecticut (Eginton, J. ), dismissing his disparate
impact employment discrimination claim, the District Court having found that the undisputed
statistical analysis provided by plaintiff's expert failed to establish a prima facie case of
disparate impact.

**DISPOSITION:** Vacated and remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant, an Hispanic male employee of appellee United
States Postal Service (USPS), appealed from a summary judgment entered in the Unites
States District Court for the District of Connecticut in favor of the USPS, dismissing the
employee's disparate impact employment discrimination claim which he brought after
unsuccessfully applying for promotions to three upper level positions.

**OVERVIEW:** In dismissing the employee's claim, the district court, relying on the United
States Supreme Court's decision in Wards Cove, found that the undisputed statistical
analysis failed to establish a prima facie case of disparate impact because the statistical
analysis should have focused on the applicant pool for the "at-issue" positions, rather
than on the overall number of Hispanics in the USPS area workforce. The reviewing court
held that such a per se rule was not appropriate in cases (such as the one at bar) where
the data concerning the number of qualified Hispanics who applied for the at-issue
promotions were not available. The district court's reliance on Wards Cove was
misplaced. It was error to have rejected out of hand the employee's statistical analysis
simply because it failed to conform to the preferred methodology described in Wards
Cove, given the Supreme Court's express endorsement in that decision of alternative
methodologies if the preferred statistics were "difficult" or "impossible" to obtain. The
USPS had presented no statistical information as to the qualified applicant pool. The
court outlined specific inquiries to be made by the district court on remand.

**OUTCOME:** The court vacated the summary judgment entered by the district court and
remanded the case for further proceedings consistent with the court's opinion.

**CORE TERMS:** disparate impact, promotion, labor pool, pool, prima facie case, statistics, summary judgment, composition, disparity, statistical analysis, at-issue, prima facie, statistical, workforce, eligible, statistically, candidate, upper, statistical evidence, labor market, quotation, summary judgment motion, underrepresented, unsuccessfully, ethnic, vacate, administrative remedies, decisionmaking process, causal relationship, employment practice

### LexisNexis(TM) HEADNOTES - Core Concepts - ✦ Hide Concepts

📄 Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN1*✚ A circuit court reviews de novo a district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

📄 Labor & Employment Law > Discrimination > Title VII
*HN2*✚ Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., prohibits overt and intentional discrimination as well as discrimination resulting from employment practices that are facially neutral, but which have a disparate impact because they fall more harshly on a protected group than on other groups and cannot otherwise be justified. Thus, disparate impact theory targets practices that are fair in form, but discriminatory in operation.

📄 Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
*HN3*✚ To make out a prima facie case of disparate impact, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two.

📄 Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
*HN4*✚ Statistical data may be submitted to show a disparity in outcome between groups, but to make out a prima facie case, the statistical disparity must be sufficiently substantial to raise an inference of causation. Although no bright line rules exist to guide courts in deciding whether a plaintiff's statistics raise an inference of discrimination, several overarching principles inform the issue. First, a plaintiff must identify a specific employment practice, rather than rely on bottom line numbers in an employer's workforce. Second, a plaintiff must present statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for promotions because of their membership in a protected group. Third, any statistics relied upon must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity when combined with other evidence.

📄 Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
*HN5*✚ According to the United States Supreme Court, generally speaking, the proper comparison of statistical evidence in a disparate impact case is between the racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market. It is such a comparison - between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs - that generally forms the proper basis for the initial inquiry in a disparate-impact case.

📄 Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
*HN6*✚ In the context of promotions, the appropriate comparison is customarily between the composition of candidates seeking to be promoted and the composition of those actually promoted. But as the United States Supreme Court cautions in Wards

Cove, in cases where such labor market statistics will be difficult if not impossible to ascertain, certain other statistics - such as measures indicating the racial composition of otherwise-qualified applicants for at-issue jobs -- are equally probative for this purpose. When the figures for the general population might accurately reflect the pool of qualified job applicants, plaintiffs may be permitted to rest their prima facie cases on such statistics as well.

▤ Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
HN7✥ In a disparate impact case, once a court has determined the relevant labor pool (and therefore what statistics are directly relevant to a prima facie case ), the court must decide whether a plaintiff's statistical analysis and other evidence is of a kind and degree sufficient to show that the defendant's promotion practices have caused the exclusion of applicants for promotions because of their protected status. In the course of making this decision, the court should be guided by established principles, beginning with the United States Supreme Court's teaching that statistics come in infinite variety and their usefulness depends on all of the surrounding facts and circumstances.

▤ Labor & Employment Law > Discrimination > Disparate Impact > Burden Shifting Analysis
HN8✥ Although there is no one test that always answers the question whether a statistical disparity is sufficiently substantial to establish a prima facie case of disparate impact, courts generally consider this level of significance sufficient to warrant an inference of discrimination. Furthermore, a court must also keep in mind that a plaintiff generally cannot attack an overall decision making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact. Thus, a decisionmaking process may be analyzed as a single employment practice if the complaining party can demonstrate to the court that the elements of the employer's decisionmaking process are not capable of separation for analysis.

**COUNSEL:** LAURA LEE A. DORFLINGER, Law Office of W. Martyn Philpot, Jr., L.L.C., New Haven, CT, for Plaintiff-Appellant.

ANTHONY T. RICE, Special Assistant United States Attorney, United States Postal Service, Northeast Area Law Office, Windsor, CT (Jeffrey A. Meyer, Assistant United States Attorney, of counsel, John A. Danaher III, United States Attorney), for Defendant-Appellee.

**JUDGES:** Before: MINER, SOTOMAYOR, and KATZMANN, Circuit Judges.

**OPINIONBY:** MINER

**OPINION:**

MINER, Circuit Judge:

Plaintiff-appellant Jesus **Malave,** an Hispanic male employee of the United States Postal Service ("Postal Service"), appeals from a summary judgment entered in the Unites States District Court for the District of Connecticut (Eginton, J.) in favor of defendant-appellee, Postmaster General of the Postal Service, dismissing **[*2] Malave's** disparate impact employment discrimination claim. In dismissing **Malave's** claim, the District Court found that the undisputed statistical analysis provided by **Malave's** expert failed to establish a prima facie case of disparate impact. In particular, the District Court held that, to make out a prima facie case of disparate impact, **Malave's** statistical analysis should have focused on the "applicant pool or the eligible labor pool" for the "at-issue" positions, rather than on the

"overall number of Hispanics in the Connecticut Postal Service workforce." For the reasons that follow, we hold that such a per se rule is not appropriate in cases (such as this one) where the data concerning the number of qualified Hispanics who applied for the at-issue promotions are not available. Accordingly, we vacate the summary judgment and remand for proceedings consistent with this opinion.

## BACKGROUND

The undisputed facts giving rise to **Malave's** appeal from the District Court's summary judgment are as follows: **Malave** is an Hispanic male who has been serving since 1994 as the Postmaster for Norfolk, Connecticut, an Executive and Administrative Schedule ("EAS")- 15 level position. n1 In **[*3]** 1996, **Malave** twice unsuccessfully applied for a promotion to the position of Manager of Customer Services, an EAS-21 level position, at the Murphy Road Post Office in Hartford, Connecticut. Between 1996 and 1997, **Malave** unsuccessfully applied for promotions to three EAS-20 level Postmaster positions in Connecticut, each of which was at a larger facility than the one in Norfolk. Each time **Malave** failed to receive a promotion, the successful candidate was not Hispanic.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The EAS is a salary structure that applies to most managerial and administrative Postal Service employees. Generally, positions with higher "EAS" numbers involve more responsibilities and consequently pay higher salaries.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

In November 1998, after exhausting his administrative remedies, n2 **Malave** commenced the action giving rise to this appeal in the District Court. He twice amended his originial complaint. The gravamen of **Malave's** Second Amended Complaint is that, in continuously failing to promote him, the Postal Service discriminated against **[*4]** him on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. n3 **Malave** claimed that the Postal Service discriminated generally against Hispanics in regard to promotions. In particular, he alleged that, "of the more than 1,000 EAS-15 and above-grade positions" that existed within the Postal Service in Connecticut at the time he filed his complaint, "only eight (8) [were] occupied by Hispanics, despite a large pool of professionally qualified individuals" and that, "from a national perspective, roughly only 4.5% of the management employees within the Postal service [who] are at grade levels from EAS-15 through [EAS-]23 are Hispanic."

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 The Postmaster General unsuccessfully argued in the District Court that **Malave** failed properly to exhaust his administrative remedies with respect to his Murphy Road promotion specifically and his disparate impact theory generally but has declined to pursue those arguments in this appeal.

n3 **Malave** also alleged hostile work environment, unlawful retaliation, and emotional distress claims but had abandoned those claims by the time the District Court ruled on the Postmaster General's summary judgment motion.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - **[*5]**

At the close of discovery, the Postmaster General moved for summary judgment, arguing inter alia, that **Malave** had failed to make out a prima facie disparate impact case. **Malave** opposed the Postmaster General's summary judgment motion and included with his opposition an expert's report containing a statistical analysis purporting to show that

Hispanics were underrepresented in the upper-level management of the Postal Service's Connecticut workforce and that this under representation was likely caused by discrimination. In particular, the report analyzed data regarding the ethnic composition of Connecticut's Postal Service employees for the period 1996 to 2000. The report, prepared by the firm of Bobo, Jaynes & McKinney, broke out these data into three groups by EAS level. The first group included EAS levels 1 through 14, the second group included EAS levels 15 through 18, and the third group included all EAS levels above 18. The report concluded that there were "large discrepancies between the number of Hispanic Americans actually occupying the two upper [groups] of EAS levels and the numbers that would be expected to occupy those [groups] if promotion opportunities were unbiased. **[*6]** " Furthermore:

> In four out of the five years (1997 being the exception) the difference between the actual number of Hispanics in the various [groups] and the expected number of Hispanics in [the upper EAS groups] was statistically significant at the ten percent level. In one out of the four years, 1999, the difference between the actual representation of Hispanic Americans at the upper EAS level and the number expected from an unbiased promotion process was statistically significant at the five percent level. Based on these statistics we conclude that Hispanic Americans were statistically underrepresented at the higher EAS levels with the [Postal Service] in Connecticut during the late 1990s.

The report went on to conclude that Hispanics were underrepresented in the upper-level EAS positions of the Postal Service as a result of a selection process "contaminated with favoritism," where "both the pressures of friendship and ethnic loyalty operate to ensure that without formal objective procedures for identifying successful applicants, review boards and supervisors composed of individuals with largely homogenous backgrounds will as a matter of course make decisions **[*7]** that simply replicate the ethnic composition of the Postal Service already in existence." The Postmaster General did not attempt to rebut the report of **Malave's** expert with the report of an expert of his own and instead argued that the report of Bobo, Jaynes & McKinney did not establish a prima facie case.

In an unpublished ruling dated November 2, 2001, the District Court granted the Postmaster General's summary judgment motion on the ground that **Malave** had failed to make out a prima facie disparate impact claim. In reaching this conclusion, the District Court cited the Supreme Court's decision in Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 104 L. Ed. 2d 733, 109 S. Ct. 2115 (1989), and our decision in Waisome v. Port Authority of New York & New Jersey, 948 F.2d 1370 (2d Cir. 1991), for the proposition that, in disparate impact cases, "the proper population for [statistical] analysis is the applicant pool or the eligible labor pool." Thus, the District Court opined that "the applicant pool or the number of eligible Hispanic candidates who applied for promotion is the relevant consideration rather than the overall number of Hispanics in the **[*8]** Connecticut Postal Service workforce." The District Court reasoned that, because **Malave's** expert provided "no information on how many Hispanics had applied for promotions to upper[-]level positions," the disparity noted by the expert "may well be attributed to the lack of qualified Hispanic candidates applying for positions rather than the challenged promotional practices." Consequently, the District Court concluded that **Malave's** "statistical evidence [was] not probative of the existence of a disparate impact" and **Malave** had failed as a matter of law to make out a prima facie disparate impact claim.

Final judgment was entered on November 7, 2001. **Malave** subsequently moved for reconsideration of the District Court's decision. The District Court granted the motion in February 2002 and, on reconsideration, adhered to its original decision. This timely appeal

followed.

## DISCUSSION

*HN1* We review de novo the District Court's grant of summary judgment, construing the evidence in the light most favorable to **Malave** and drawing all reasonable inferences in his favor. See Mount Vernon Fire Ins. Co. v. Belize N.Y., Inc., 277 F.3d 232, 236 (2d Cir. 2002).

*HN2* "Title VII prohibits  **[\*9]** overt and intentional discrimination as well as discrimination resulting from employment practices that are facially neutral, but which have a 'disparate impact' because they fall more harshly on a protected group than on other groups and cannot otherwise be justified." Waisome, 948 F.2d at 1374. Thus, "disparate impact theory targets 'practices that are fair in form, but discriminatory in operation.'" Smith v. Xerox Corp., 196 F.3d 358, 364 (2d Cir. 1999) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971)). *HN3* To make out a prima facie case of disparate impact, a plaintiff must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001).

*HN4* Statistical data may be submitted "to show a disparity in outcome between groups, but to make out a prima facie case[,] the statistical disparity must be sufficiently substantial to raise an inference of causation." Smith, 196 F.3d at 365. As we noted in Smith, "although  **[\*10]** no bright line rules exist to guide courts in deciding whether [a] plaintiff['s] statistics raise an inference of discrimination, several overarching principles inform the issue." Id. First, a plaintiff must "identify a specific employment practice, rather than rely on bottom line numbers in an employer's workforce." Id. Second, a plaintiff must "present statistical evidence 'of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for . . . promotions because of their membership in a protected group.'" Id. (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994, 101 L. Ed. 2d 827, 108 S. Ct. 2777 (1988)). Third, any statistics relied upon "must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity" when combined with other evidence. Robinson, 267 F.3d at 160.

Here, the District Court found that **Malave's** statistical analysis failed to establish a prima facie case of disparate impact because that analysis did not focus on the "applicant pool or the eligible labor pool" for the "at-issue" promotions, and instead focused  **[\*11]** on the "overall number of Hispanics in the Connecticut Postal Service workforce." The District Court relied on the Supreme Court's decision in Wards Cove in adopting this per se rule. This reliance on Wards Cove was misplaced, however. *HN5* In that case, the Court opined that, generally speaking,

> the proper comparison [of statistical evidence in a disparate impact case is] between the racial composition of [the at-issue jobs] and the racial composition of the qualified . . . population in the relevant labor market. It is such a comparison - between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs - that generally forms the proper basis for the initial inquiry in a disparate-impact case.

Wards Cove, 490 U.S. at 650-51 (internal quotation marks omitted). *HN6* In the context of promotions, we have held that the appropriate comparison is customarily between the composition of candidates seeking to be promoted and the composition of those actually promoted. See Waisome, 948 F.2d at 1372. But the Supreme Court also cautioned in Wards

Cove that "in cases where such labor market **[\*12]** statistics will be difficult if not impossible to ascertain, we have recognized that certain other statistics - such as measures indicating the racial composition of 'otherwise-qualified applicants' for at-issue jobs -- are equally probative for this purpose." Wards Cove, 490 U.S. at 651 (citing New York City Transit Auth. v. Beazer, 440 U.S. 568, 585, 59 L. Ed. 2d 587, 99 S. Ct. 1355 (1979)); see also Smith, 196 F.3d at 368 ("In the typical disparate impact case the proper population for analysis is the applicant pool or the eligible labor pool.") (emphasis added). In addition, the Court noted that when the "'figures for the general population might . . . accurately reflect the pool of qualified job applicants,' . . . [the Court has] even permitted plaintiffs to rest their prima facie cases on such statistics as well." Wards Cove, 490 U.S. at 651 n.6. (internal quotations and citations omitted).

At oral argument, counsel for the Postmaster General conceded that data concerning the number of qualified Hispanics who applied for the at-issue promotions are not available. Therefore, it was error for the District **[\*13]** Court to have rejected out of hand **Malave's** statistical analysis simply because it failed to conform to the preferred methodology described in Wards Cove, given the Supreme Court's express endorsement in that decision of alternative methodologies if the preferred statistics are "difficult" or "impossible" to obtain. Accordingly, we must vacate the summary judgment and remand the case to the District Court for proceedings consistent with this opinion.

On remand, the District Court must determine whether **Malave** makes out a prima facie case of disparate impact. To do so, the District Court must first decide what the most appropriate labor pool is and whether the expert's method utilized the best and most appropriate available labor pool information. n4 *HN7*Next, having determined the relevant labor pool (and therefore what statistics are directly relevant to **Malave's** prima facie case ), the District Court must decide whether **Malave's** statistical analysis and other evidence is "of a kind and degree sufficient to show" that the Postal Service's promotion practices have "caused the exclusion of applicants for . . . promotions" because they are Hispanic. Watson, 487 U.S. at 994. **[\*14]** In the course of making this decision, the District Court should be guided by established principles, beginning with the Supreme Court's teaching that "statistics come in infinite variety and . . . their usefulness depends on all of the surrounding facts and circumstances." Id. at 996 n.3 (internal quotation marks omitted).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 It may be that, even if the data were available, the applicant pool would not have been the most appropriate underlying labor pool and that without it, no other labor pool is appropriate even as a close proxy. See Wards Cove, 490 U.S. at 650-51 & n.6; Shidaker v. Tisch, 833 F.2d 627, 631 (7th Cir. 1986 ). While **Malave** argues that the applicant pool is not the relevant labor pool, lack of data on the applicant pool is relevant only if the applicant pool is the relevant labor pool. If not, **Malave** must either use the relevant labor pool in his statistical analysis or explain why doing so is not possible.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The District Court should also consider **[\*15]** whether **Malave** can show "a statistically significant disparity of two standard deviations." Smith, 196 F.3d at 365. As we observed in Smith, *HN8*although there is no one test that always answers the question whether a statistical disparity is sufficiently substantial to establish a prima facie case of disparate impact, courts "generally consider this level of significance sufficient to warrant an inference of discrimination." Id. at 365. Furthermore, the District Court must also keep in mind that a plaintiff "generally cannot attack an overall decision making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." Stout v. **Potter**, 276 F.3d 1118, 1124 (9th Cir. 2002) (citing Wards Cove, 490 U.S. at 656-57). Thus, a decisionmaking process "may be analyzed as a

single employment practice if 'the complaining party can demonstrate to the court that the elements of [the employer's] decisionmaking process are not capable of separation for analysis.'" Stout, 276 F.3d at 1124 (quoting 42 U.S.C. § 2000e-2 (k)(1)(B)(i)).  **[*16]**  Of course, if the District Court determines that **Malave** has made out a prima facie case, it should then address the Postmaster General's remaining arguments in favor of summary judgment and proceed with the case as it deems appropriate.

Accordingly, our decision to remand this case to the District Court should not be construed as anything other than a rejection of the District Court's adoption of a rule that the lack of statistical information as to an applicant pool always renders it impossible to establish a prima facie disparate impact case.

## CONCLUSION

For the foregoing reasons, we vacate the summary judgment entered by the District Court and remand the case for further proceedings consistent with this opinion.

Source:   Legal > Cases - U.S. > **Federal Cases, Combined Courts** ⓘ
Terms:   **malave potter**  (Edit Search)
View:   Full
Date/Time:  Wednesday, March 26, 2003 - 2:20 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



# EXHIBIT / ATTACHMENT

## B

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Worthen v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1717-CC;
Speight v. World Championship Wrestling, Inc. and Turner Sports,
Inc., Civ. File No. 1-00-CV-1718-CC;
Easterling v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1715-CC

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' STATISTICAL EVIDENCE OF RACIAL DISCRIMINATION

COME NOW Plaintiffs William Worthen, Lester Speight and

Darron Easterling, and hereby submit their Supplemental Brief in

Support of Plaintiffs' Statistical Evidence of Racial

Discrimination, showing the Court as follows:

### INTRODUCTION

Pursuant to this Court's Scheduling Order, Defendants have

filed Motions, Briefs, and Reply Briefs as to all of the

Plaintiffs' cases.  In their Reply Briefs as to the above-

referenced Plaintiffs, Defendants have asked the Court to

dismiss Plaintiffs' statistical evidence of discrimination.

Defendants challenge Plaintiffs' statistical evidence of

discrimination, among other reasons, because Defendants contend

that Plaintiffs have not presented "any evidence with respect to

the number of African-American applicants, or non-minority

applicants who actually applied for positions and/or

opportunities at WCW."   (See, e.g., Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment as to Plaintiff Walker at 16).

The Second Circuit Court of Appeals recently addressed the situation where, as here, a defendant challenges a plaintiff's statistical evidence based on alleged insufficient data regarding applicants.  Malave v. Potter, 2003 U.S. App. LEXIS 3024 at *12-13 (2nd Cir. 2003).

## ARGUMENT AND CITATION OF AUTHORITY

In Malave, supra, the district court granted summary judgment because the plaintiff's statistical evidence was ostensibly not based on specific data regarding the actual applicants for the positions in question.  The Court of Appeals, however, rejected the district court's conclusion that the lack of applicant data always renders it impossible to establish a prima facie disparate impact case.  Id. at *16.

The Court emphasized that counsel for the defendant-employer had "conceded that data concerning the number of qualified Hispanics who applied for the at issue promotions are not available."  Because the data was not available, the court held that it was "error for the district court to have rejected out of hand [plaintiff's] statistical analysis simply because it failed to conform to the preferred methodology. . . "

- 2 -

The Malave decision, quoting Supreme Court authority, reiterated the well-established principle that "statistics come in infinite variety and . . . their usefulness depends on all of the surrounding facts and circumstances." Malave, supra, at *14.

This Court should note that, unlike the situation in Malave, Plaintiffs have presented data upon which they rely in presenting their statistical evidence of discrimination. Indeed, Plaintiffs rely on the information and data produced by Defendants.

Thus, Defendants fail to acknowledge that any deficiencies in Plaintiffs' data regarding the number of African-American applicants is solely attributable to Defendants' failure to maintain, produce and/or verify such data.[1]

Plaintiffs, therefore, respectfully request this Court to consider the Malave decision, along with the remaining case law, which amply demonstrate that this Court should consider Plaintiffs' statistical evidence.

---

[1] Plaintiffs are restricting this Supplemental Brief to reflect the Malave decision, and are therefore not addressing all of Defendants' remaining unpersuasive challenges to Plaintiffs' statistical analysis. If this Court requires additional briefing regarding Plaintiffs' statistical analysis, Plaintiffs are prepared to provide further supplemental briefs. Also, Defendants have indicated they will file a Daubert motion; Plaintiffs will fully respond to such a motion at the appropriate time.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask this Court to consider the Second Circuit's recent decision in <u>Malave</u>, <u>supra</u>, in adjudicating Defendants' pending motions for summary judgment.

Respectfully submitted this ____ day of April, 2003.

                                             _____

Cary Ichter
Georgia Bar No. 382515
Charles J. Gernazian
Georgia Bar No. 291703
Michelle M. Rothenberg-Williams
Georgia Bar No. 615680

**MEADOWS, ICHTER & BOWERS, P.C.**
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305
Telephone:  (404) 261-6020
Telecopy:   (404) 261-3656

- 4 -

## CERTIFICATE OF SERVICE

This is to certify that I have this date served opposing counsel to this action with the foregoing **SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' STATISTICAL EVIDENCE OF RACIAL DISCRIMINATION** by causing a copy of same to be deposited in the United States Mail in a properly addressed envelope with postage affixed thereon and addressed as follows:

> Eric Richardson, Esq.
> Evan Pontz, Esq.
> Troutman Sanders LLP
> Suite 5200, Bank of America Plaza
> 600 Peachtree Street, N.E.
> Atlanta, Georgia  30308-22165

This _____ day of April, 2003.


_____
Charles J. Gernazian
Georgia Bar No. 291703


G:\WCW\Common to All\Pleadings Consolidated\Supp Brf in Supp of Pls' Stat Evidence - 3.doc



# EXHIBIT / ATTACHMENT

## _____ C _____

(To be scanned in place of tab)

# MEADOWS, ICHTER & BOWERS

### A T T O R N E Y S   A T   L A W

EIGHT PIEDMONT CENTER, SUITE 300
3525 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA 30305
TELEPHONE 404-261-6020
FACSIMILE 404-261-3656
http://www.miblaw.com

December 12, 2002

Eric A. Richardson, Esq.
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2218

Re:   WCW Consolidated Cases; Huffman and Miller

Dear Eric:

I believe that I have already submitted copies of the enclosed Declarations.  Nevertheless, in an abundance of caution, I enclose the Declarations of Elvin Carter and Brenda Smith.

If you have any questions, please give me a call.

With best regards.

Very truly yours,

Charles J. Gernazian

CJG/bv
Enclosures



# EXHIBIT / ATTACHMENT

## D

(To be scanned in place of tab)

## DECLARATION OF ELVIN CARTER

STATE OF GEORGIA
COUNTY OF_____

Elvin Carter gives the following declaration under penalty of perjury and states as follows:

1.

I wrestled for WCW in 1991 and 1992.

2.

At that time, WCW had four regular African-American wrestlers. Ron Simmons (African-American), Curtis Hughes (African-American), and Butch Reeves (African-American) were three of the regular African-American wrestlers. Although all three of those individuals were very good wrestlers, I believe they were treated differently because of their race.

3.

I recall that when Ron Simmons became the World Champion, in 1992, that he did not receive an increase in his salary even though the Caucasian wrestlers who became world champion got a much better salary after they became world champion.

4.

I, myself, felt discriminated against by WCW officials. I was never given a contract, and I was only used on a nightly basis.

5.

While I wrestled at WCW, I routinely went to WCW's training facility. The person who was managing the training facility was Jody Hamilton.

6.

I often heard Jody Hamilton use racial remarks and derogatory language about African-Americans.  I heard him use the word "nigger," on many occasions.

7.

On one occasion, Jody Hamilton also discouraged me. He said why do you keep hanging around, you're not going to get a break here.  He never told me what I could do differently, or what moves I needed to work on.  Although he did not say it was because of my race, I felt that I was not going to be used because of my race.

8.

Although I did not have as much personal interaction with many of the other WCW officials, I often did overhear conversations in the locker room or at the various WCW events.

9.

I often heard Ole Anderson use the word "nigger."  I also heard Arn Anderson use the word "nigger."

10.

Throughout the years, I have also heard Terry Taylor constantly use the word "nigger," and use other racially derogatory language.  In addition to using racial slurs, Terry Taylor often let it be known to me and others his opinions about black wrestlers.

11.

Terry Taylor told me that "a black man is not going to make it, so why don't you find other work."  He indicated that he did not believe anyone would pay to see black men wrestle.

12.

Terry Taylor often gave me and other African-American wrestlers a hard time, and let it be known that he thought that we were "wasting our time."

I declare under penalty of perjury that the foregoing
is true and correct.

_Elvin Carter_
Elvin Carter

_10-20-002_
Executed on (Date)

## CERTIFICATE OF SERVICE

This is to certify that I have this date served opposing counsel to this action with the foregoing **MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF AND TO SUPPLEMENT THE RECORD WITH DECLARATION OF ELVIN CARTER** by causing a copy of same to be deposited in the United States Mail in a properly addressed envelope with postage affixed thereon and addressed as follows:

Eric Richardson, Esq.
Evan Pontz, Esq.
Troutman Sanders LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-22165

This 2nd day of April, 2003.

Charles J. Gernazian
Georgia Bar No. 291703

G:\WCW\Common to All\Pleadings Consolidated\Mtn for Leave to File Supp Brf-3.doc

- 5 -